IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.R.,                                          :
                    Petitioner                 :
                                               :
          v.                                   :
                                               :
Pennsylvania State Police,                     :    No. 127 M.D. 2019
                    Respondent                 :    Submitted: August 28, 2020


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                        FILED:  November 10, 2020


          Before the Court, in our original jurisdiction, are the Preliminary
Objections filed by the Pennsylvania State Police (PSP) to the Petition for Review
filed by J.R. (Petitioner).  Representing himself, Petitioner seeks a declaration that
he is not required to register as a sex offender with PSP under the Sexual Offender
Registration and Notification Act (SORNA), Act of February 21, 2018, P.L. 27 (Act
10), 42 Pa.C.S. §§ 9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L.
140 (Act 29) (collectively, Act 10 or SORNA II), and that SORNA II is
unconstitutional as applied to him under *Commonwealth v. Muniz*, 164 A.3d 1189
(Pa. 2017), *cert. denied sub nom. Pennsylvania v. Muniz*, __ U.S. __, 138 S.Ct. 925

(2018).[1] PSP asserts that Petitioner fails to state a cognizable claim. For the reasons stated herein, we overrule PSP's Preliminary Objections.

By way of brief statutory background, beginning in 1995, Pennsylvania's General Assembly enacted a series of statutes and amendments requiring sex offenders living within the Commonwealth to register for varying periods of time with PSP based on their convictions for certain sexual offenses. The General Assembly enacted the first of these statutes, commonly known as Megan's Law I, *former* 42 Pa.C.S. §§ 9791-9799.6, in 1995, followed five years later by what is commonly known as Megan's Law II, *former* 42 Pa.C.S. §§ 9791-9799.7. In 2004, the General Assembly enacted what is commonly known as Megan's Law III, *former* 42 Pa.C.S. §§ 9791-9799.75, which remained in effect until the enactment of SORNA I, 42 Pa.C.S. §§ 9799.10-9799.41, in 2012. On July 19, 2017, the Pennsylvania Supreme Court handed down the decision in *Muniz*. Thereafter, in 2018, to clarify that sex offender registration provisions were not *ex post facto* punishment, the General Assembly enacted SORNA II.

In 1988, Petitioner entered a plea of guilty in the Court of Common Pleas of Philadelphia County to one count of involuntary deviate sexual intercourse[2] and one count of rape[3] for offenses he committed in 1987. *See* Pet. for Review ¶ 3. Upon his initial release from incarceration in January 2014, Petitioner began registering as a lifetime sex offender under the then-effective version of

---

[1] *Muniz* held that SORNA I violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions by retroactively increasing registration obligations on certain sex offender registrants. *Muniz*, 164 A.3d at 1223-25.

[2] 18 Pa.C.S. § 3123.

[3] 18 Pa.C.S. § 3121.

Pennsylvania's sex offender registration program, SORNA I. Following our Supreme Court's decision in *Muniz* and the General Assembly's subsequent enactment of Act 10, on March 19, 2018, PSP sent Petitioner a letter advising him that he "may be" subject to Act 10's sex offender registration requirements and compelling him to comply with those requirements by May 22, 2018. *See* Pet. for Review ¶ 3 and Ex. B. In May 2018, Petitioner sent PSP a request to be removed from the sex offender registry. *See id.* On January 7, 2019, PSP sent Petitioner a notice to register as a sex offender, which he accordingly did on January 15, 2019. *See* Pet. for Review ¶ 3 and Exs. C & D.

On January 24, 2019, Petitioner filed the Petition for Review in this Court's original jurisdiction seeking relief from SORNA II's sex offender registration requirements.[4] *See generally* Pet. for Review. On May 6, 2019, PSP filed the instant Preliminary Objections arguing that the Petition for Review is legally insufficient because: (1) PSP must enforce Petitioner's registration requirements in accordance with the law; (2) SORNA II is not an *ex post facto* law; (3) Act 10 complies with federal law; and (4) mandamus is improper. *See* Prelim. Objections at 4-15. The parties have each submitted briefs, and the matter is now ripe for determination by this Court.[5]

---

[4] The Petition for Review phrases Petitioner's challenge in relation to "SORNA." *See* Pet. for Review ¶ 3. However, because Petitioner clearly seeks relief from sex offender registration obligations under any requirement schemes and his brief discusses both Act 10 and Act 29, we will discuss the collective implications of Act 10 and Act 29 – Pennsylvania's current sex offender registration scheme – as it relates to Petitioner.

[5] When ruling on preliminary objections

> courts accept as true all well-pleaded allegations of material facts as well as all of the inferences reasonably deducible from the facts. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party.

3

In its first preliminary objection, PSP argues that the Petition for Review should be dismissed because PSP must enforce the current sex offender registration requirements in compliance with the law. *See* Prelim. Objections at 4-8; *see also* PSP's Brief at 5-9. PSP argues that SORNA II applies to Petitioner because it expressly applies to individuals who were required to register as sex offenders with PSP between April 1996 and December 2012, and whose period of registration has not expired. *See* Prelim. Objections at 6-7; *see also* PSP's Brief at 7-8. PSP further argues that Petitioner was "subject" to all versions of the sex offender registration statutes while in prison despite the fact that the statutes did not require Petitioner to actually register until his release. *See* Prelim. Objections at 7-8; *see also* PSP's Brief at 8-9. We do not agree.

Subchapter H of Act 29, titled "Registration of Sexual Offenders," provides that Act 29's registration requirements "shall apply to individuals *who committed a sexually violent offense on or after December 20, 2012*, for which the individual was convicted." 42 Pa.C.S. § 9799.11(c) (emphasis added). Further, Subchapter I of Act 29, titled "Continued Registration of Sexual Offenders," states that its provisions shall apply to those individuals who were:

> (1) *convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012*, whose period of registration with [] P[SP], as described in section 9799.55 (relating to registration), has not expired; or
>
> (2) *required to register with [] P[SP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012*, whose period of registration has not expired.

---

*Gregory v. Pa. State Police*, 160 A.3d 274, 276 (Pa. Cmwlth. 2017).

4

42 Pa.C.S. § 9799.52 (emphasis added); *see also* 42 Pa.C.S. § 9799.55 (setting forth the registration requirements for various categories of sex offenders).

This Court has determined in three recent decisions that Subchapter I of Act 29 is unconstitutional as applied to individuals whose crimes predate the enactment of Pennsylvania's sex offender registration schemes. *See T.S. v. Pa. State Police*, 231 A.3d 103 (Pa. Cmwlth. 2020); *M.G. v. Pa. State Police* (Pa. Cmwlth., No. 201 M.D. 2019, filed Sept. 25, 2020); *B.W. v. Pa. State Police* (Pa. Cmwlth., No. 433 M.D. 2018, filed July 6, 2020).[6]  First, in *T.S.*, the Court evaluated Subchapter I of Act 29 under an *ex post facto* analysis regarding a petitioner who committed his crimes in 1990.[7]  In conducting this analysis, the Court examined the

---

[6] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value.

[7] This Court has explained the framework for determining the constitutionality of a law under an *ex post facto* analysis as follows:

> Like our Supreme Court and the United States Supreme Court, we apply a two-prong analysis to determine whether a law inflicts a greater punishment.  First, we look to see whether the General Assembly's intent is to impose punishment.  If so, the law is punitive.  If the General Assembly's intent is to enact a nonpunitive civil regulatory scheme, we proceed to the second prong to determine whether the statute is so punitive either in purpose or effect as to negate the General Assembly's intention to deem it civil. In order to determine whether the statute is so punitive as to negate the General Assembly's intent, our review is guided by the factors set forth by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144[] (1963).  Commonly known as the *Mendoza-Martinez* factors, these seven factors are applied to determine whether an Act of Congress is penal or regulatory in character:
>
> > 1. whether the sanction involves an affirmative disability or restraint, 2. whether it has historically been regarded as punishment, 3. whether it comes into play only on a finding of scienter, 4. whether its operation will promote the

*Mendoza-Martinez* factors to determine whether the provisions of Subchapter I of Act 29 overcame the General Assembly's non-punitive intent in enacting Subchapter I of Act 29. *See T.S.*, 231 A.3d at 119-37. The Court concluded that the *Mendoza-Martinez* factors weighed in favor of Subchapter I of Act 29 being punitive as applied to a petitioner whose crimes predated the enactment of any sex offender registration scheme in Pennsylvania, explaining as follows:

> On the whole, balancing the factors in accordance with the analysis used by our Supreme Court in *Muniz,* we must find that five of the seven weigh in favor of finding subchapter I of Act 29 to be punitive when applied to [the p]etitioner. PSP's arguments to the contrary focus on the differences between SORNA and subchapter I of Act 29 that were intended to address the Supreme Court's decision in *Muniz*. However, these arguments overlook the fact that the requirements of SORNA or any prior registration scheme did not exist at the time of [the p]etitioner's offense. While some form of retroactive registration requirements may be constitutional [] applying the analysis in *Muniz*, we must find the cumulative effect of the registration requirements of subchapter I of Act 29 on [the p]etitioner goes beyond imposing mere registration and is punishment. [The

> > traditional aims of punishment – retribution and deterrence, 5. whether the behavior to which it applies is already a crime, 6. whether an alternative purpose to which it may rationally be connected is assignable for it, and 7. whether it appears excessive in relation to the alternative purpose assigned.

> > The *Mendoza-Martinez* factors are intended to be useful guideposts that are neither exhaustive nor dispositive. Only the clearest proof may establish that a law is punitive in effect, and in determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme.

*T.S.*, 231 A.3d at 119 (internal citations, quotation marks, brackets, and emphasis omitted).

6

p]etitioner, who committed the crimes giving rise to his present obligation to register in 1990, could not have fair warning of the applicable law that now mandates his registration and the terms thereof. His right to relief on these *ex post facto* claims is not premised in a right to less punishment, but the lack of fair notice and governmental restraint that occurred when the General Assembly increased punishment beyond what was prescribed when the crime was consummated. Accordingly, we determine that the *Mendoza-Martinez* factors weigh in favor of finding subchapter I of Act 29 to be punitive as applied to [the p]etitioner under the *Ex Post Facto* clause of the United States Constitution.

*T.S.*, 231 A.3d at 136-37 (internal citations, quotation marks, and brackets omitted). Based on this analysis, the Court declared the application of Subchapter I of Act 29 as applied to the petitioner unconstitutional as in violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *See id.* at 137.

Less than two months later, this Court decided *B.W.*, in which we again found, based on the reasoning and result in *T.S.*, that the application of Subchapter I of Act 29 to an individual who committed his crimes prior to the enactment of any sex offender registration schemes in Pennsylvania was unconstitutional in violation of the prohibition against *ex post facto* laws. *See B.W.*, slip op. at 14. Approximately one month ago, this Court reached the same conclusion regarding Subchapter I in *M.G.* as again the individual committed his crimes before Pennsylvania had any sex offender registration requirements in place. *See M.G.*, slip op. at 11-12 (citing *T.S.*, 231 A.3d at 118).

These decisions are applicable to the instant matter.[8] No dispute exists here that Petitioner committed the crimes of involuntary deviate sexual intercourse and rape in 1987 and was convicted and sentenced thereon in 1988, prior to the enactment of Megan's Law I in 1996. Therefore, because his crimes predate the enactment of any sex offender registration requirements, the application of such registration requirements to Petitioner would constitute punishment and violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions as well. *T.S.*; *M.G.*; *B.W.*

Accordingly, Petitioner has stated a cognizable claim regarding whether SORNA II's sex offender registration requirements apply to his circumstances and/or whether they violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions. Thus, we overrule PSP's Preliminary Objections.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] We acknowledge the Supreme Court's recent opinion in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), which reversed a court of common pleas order that granted two petitioners' individual requests to terminate their obligations to comply with sex offender registration requirements based on an argument that the retroactive application of changes to SORNA constituted an *ex post facto* violation. The Supreme Court instead found that the *ex post facto* claim regarding Subchapter I of Act 29 failed because Subchapter I does not constitute criminal punishment. *Lacombe*, 234 A.3d at 626-27. The *Lacombe* decision is inapposite to the instant matter, however, because, unlike the petitioners in *Lacombe*, Petitioner's crimes occurred prior to the enactment of any sex offender registration scheme in Pennsylvania.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.R.,                                    :
              Petitioner         :
                                :
          v.                           :
                                :
Pennsylvania State Police,               :    No. 127 M.D. 2019
              Respondent        :

# O R D E R

AND NOW, this 10th day of November, 2020, Respondent's Preliminary Objections are OVERRULED. Respondent shall file an Answer to the Petition for Review within 30 days of the date of this Order.

_____
CHRISTINE FIZZANO CANNON, Judge